1  he never admitted to this, and you can't hold the dope in
2  Moloka'i that it's part of the offense and you can't
3  charge him for that determining the sentencing guidelines.
4  And when you lose that argument -- because he's filed a
5  statement saying that's a separate conspiracy. Then when
6  you lose that argument, come back and say, "Wait. Wait a
7  minute now. Hang on. I want more time. I want to comply
8  with the safety valve or try to." It's too late. It's
9  not right. It's not right, and it's too late for this.
10           THE COURT: Okay.
11           MR. MUEHLECK: Thank you.
12           THE COURT: You want to be heard?
13           MR. GREEN: Well, I don't believe he's an
14  organizer or supervisor at all, and that was never argued
15  by the government.
16           THE COURT: Well, they didn't have this.
17           MR. GREEN: Well, we took the court's invitation
18  to give a complete and full disclosure.
19           THE COURT: Well, wait a minute, now. You did
20  not need my invitation to do it. I was advising
21  Mr. Kekahuna of what the law states. It was my assumption
22  that you, Mr. Green, being an extremely experienced
23  criminal defense lawyer, knew about these ways to get out
24  of the mandatory minimum 10 years and had so advised
25  Mr. Kekahuna. You knew that the only way -- if I did find

Exhibit-7

that there was a mandatory 10-year minimum, the only way to escape that was if Mr. Kekahuna either satisfied the safety valve or substantially assisted the government leading to a government motion. You knew that; right?

MR. GREEN: Well, I certainly knew that he was not -- he made an election not to substantially cooperate against his brother.

THE COURT: But you knew that he either had to have the safety valve or the substantial assistance motion --

MR. GREEN: Yes.

THE COURT: -- and you told him that.

MR. GREEN: Yes.

THE COURT: Okay. So --

MR. GREEN: Your Honor, you gave me an invitation yesterday, and that's why it was continued to today and that's why we did what we did.

THE COURT: I did let you do that, but --

MR. GREEN: If you're telling me it was a nullity --

THE COURT: No, I'm not telling you it was a nullity, but I am --

MR. GREEN: I mean you said there were two ways yesterday.

THE COURT: Yes. I'm taken aback by the content

1  big picture, what is five months when we're looking at 120
2  months? I mean what is it?
3  THE COURT: This is my concern, okay: Usually
4  when somebody is facing a 10-year mandatory minimum, they
5  don't keep staying out, unless they're cooperating with
6  the government. The government is not telling me that
7  Mr. Kekahuna is cooperating. In fact, what Mr. Muehleck
8  is claiming is that Mr. Kekahuna is avoiding the
9  government. And so, you know, this is --
10 MR. GREEN: He's never missed a court
11 appearance. He's been given permission to travel --
12 THE COURT: Cooperation has nothing to do with
13 court appearance.
14 MR. GREEN: No, I'm just saying as far as
15 whether he's a risk or danger.
16 THE COURT: Yeah, but he may have thought all
17 along that he was not going to serve 10 years. He may
18 even be hoping still for that. But today is the first,
19 you know, that we're at a sentencing hearing, and I think
20 he must be pretty worried. And that would change
21 anybody's state of mind. I'm pretty concerned that he is
22 now a flight risk more so than he would have been earlier.
23 MR. GREEN: He's known the marshals have been
24 sitting in this courtroom for the last three hearings
25 waiting to take him into custody. Pretrial Services says

1   then the government will bring a motion --

2   THE DEFENDANT: Yeah.

3   THE COURT: -- to lower your sentence. Those

4   are the ways to avoid it.

5   Now, in this case because I think there's a

6   preponderance of the evidence you'd need a motion, I

7   guess, really to help you get out of this situation

8   because otherwise the guidelines are 121 to 151 months.

9   So even if you escape the mandatory minimum, you'd still

10  have those guidelines. But I'm sure Mr. Green has talked

11  to you about these things; right?

12  MR. GREEN: Your Honor, this is the way this

13  played out: Mr. Kekahuna in my office was debriefed by

14  agents. He admitted his role, and I'm convinced he told

15  the truth to them. The government's position is that he

16  was never forthright in discussing his brother's role in

17  the offense.

18  And I think one of the problems I've seen over

19  the 30 some years I've been practicing in federal court is

20  that the reason that I believe the federal sentencing

21  guidelines were archaic -- and they finally have at least

22  been addressed -- is that, when you have someone like Les,

23  who actually has been a wonderful son -- he's done

24  everything. He was a well-respected athlete. He served

25  his country.

```
 1              He comes back.  He's here for a year.  He has an
 2   opportunity -- as stupid as it was, he's in a restaurant
 3   in Waikiki where there's two people making a deal for
 4   drugs.  He winds up going back to St. Louis High School
 5   where the person he's with takes the drugs out of a
 6   locker, winds up -- winds up going to Latu.  He knows and
 7   he believes there's probably ice in there.  Never knows
 8   the amount.  His entire function is to go pick up the
 9   money.
10              THE COURT:  Okay.  But, you see, I know you're
11   arguing this, but I've got a mandatory minimum.
12              MR. GREEN:  No, I understand that.
13              THE COURT:  That's my view of how this case has
14   progressed.
15              MR. GREEN:  I understand.
16              THE COURT:  There's a mandatory minimum.  So I
17   just want to make sure that Mr. Kekahuna understands there
18   are only two ways to escape it.
19              MR. GREEN:  Yes.
20              THE COURT:  One way is if you satisfy the safety
21   valve.  For that you have to tell the government
22   truthfully everything you know about this.  The other way
23   is if the government brings a motion for downward
24   departure based on substantial assistance.
25              Now, if you qualify for the safety valve, then I
```

Exhibit-I

38

1    MR. GREEN: No. I think we've made the record
2    over the past few months, Your Honor, and I appreciate you
3    letting me do it more than once. I'm not being
4    condescending. I mean that. I appreciate you letting me
5    at least spread of record my objections.
6    THE COURT: I think your concerns are on the
7    record.
8    Okay. Then if there are no other objections
9    that require a ruling, I'm going to adopt the Presentence
10   Investigation Report, and this document will serve as my
11   set of findings for purposes of sentencing.
12   Mr. Green, why don't I invite you to sit down
13   for a moment.
14   The document will be filed under seal, but it
15   will still be available to the lawyers. Also to be filed
16   under seal but not made available to the lawyers is the
17   Probation Office's recommendation to me.
18   So having adopted the PSR, I will state based on
19   this PSR -- hold on, now. I've reshuffled all my papers
20   when you were quoting from Addendums 7 and 8 and -- the
21   total offense level here is 32. The criminal history
22   category is 1. By statute, given the findings I've made
23   so far, there is a mandatory minimum 10 years in custody,
24   maximum of life for Count 1. For each of Counts 23, 24,
25   and 25 there is a maximum of four years.

1  guidelines like a statute requiring proof beyond a

2  reasonable doubt.

3           So right now we need proof beyond a reasonable

4  doubt to trigger a 10-year mandatory minimum sentence for

5  Mr. Kekahuna and a maximum sentence of life in prison.  We

6  had a discussion about whether what was said at the guilty

7  plea sufficed, and I found that it did suffice to be proof

8  beyond a reasonable doubt triggering the 10-year mandatory

9  minimum and a maximum of life in prison.

10          MR. GREEN:  May I speak to that issue, Your

11 Honor.

12          THE COURT:  Hold on.  What Booker made clear was

13 I do not need proof beyond a reasonable doubt to go above

14 the 10-year mandatory minimum.  That's what I understand

15 the law to be, I think that's exactly what the probation

16 officer wrote, and I'd be surprised if Mr. Muehleck has a

17 different view of the law as it applies to this case.  Do

18 you?

19          MR. MUEHLECK:  I don't.  I don't have a

20 different view of the law as to what the court says Booker

21 does to Blakely, Ameline overruling them.

22          MR. GREEN:  Well, that was very carefully

23 structured, what he said.  But may I speak to that issue,

24 Your Honor?

25          THE COURT:  I don't know it was so careful.

1  he done that, then you would agree with me that he would
2  be subject to a 20-year maximum sentence.
3          MR. GREEN:  Well, yeah.  I mean it's not an
4  enhancement.  As long as there's not an enhancement where
5  the maximum is raised to above 20 years, that's what he's
6  looking at.
7          THE COURT:  So he would have been subject to a
8  20-year maximum sentence, no mandatory minimum.
9          Now, in this case because I'm finding -- because
10 I've already ruled that what he gave me at the guilty plea
11 colloquy supports a 10-year mandatory minimum, if I were
12 to sentence him to that 10 years, he would be below the
13 20-year maximum that a plea to 841(b)(1)(C) would have
14 allowed me to give.
15         MR. GREEN:  Yes, but he's entitled to a hearing
16 on that.
17         THE COURT:  Wait a minute, now.  Wait a minute,
18 now.  You are not entitled to a jury trial --
19         MR. GREEN:  No, I'm not talking about a jury
20 trial.
21         THE COURT:  -- on the amount of drug on
22 841(b)(1)(C).  We're in agreement on that.
23         MR. GREEN:  Yes.
24         THE COURT:  All right.
25         MR. GREEN:  I'm talking about a sentencing